**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

_____

| | |
|---|---|
| **PAUL C. HALE,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : |
| | : |
| **CON-WAY TRANSPORTATION** | : |
| **SERVICES, INC.,** | : |
| | : |
| **Defendants.** | : |

**Civil Action No. 2:04cv666**

**<u>OPINION</u>**

Plaintiff Paul C. Hale managed a service center in Norfolk, Virginia owned by the trucking company Con-Way Transportation Services, Inc. ("Con-Way").  After several audits documented the service center's non-compliance with federal law and various internal regulations, Con-Way terminated plaintiff's employment. Plaintiff then brought this action, alleging that Con-Way really fired him because of his age.  The matter is now before the Court on defendant Con-Way's Motion for Summary Judgment.  (Docket No. 11).  For the reasons stated below, the Court **GRANTS** defendant's motion.

I.  Factual and Procedural History[1]


Plaintiff Hale became employed by defendant Con-Way in September 1995 after Con-Way merged with his previous employer, Freightways.  In May 1997, Con-Way promoted plaintiff to Service Center Manager ("SCM") of a Category 6 service center in Bryan, Texas.[2]  In April 1998, Con-Way promoted plaintiff to a SCM position at a Category 4 service center in Baton Rouge, Louisiana.  In February 2000, plaintiff was promoted to a SCM position at Con-Way's Category 3 service center in Norfolk, Virginia.

George Wittwer, Con-Way's manager of procedural compliance, audited the Norfolk service center in October 2000.  Con-Way performs audits to determine whether the service centers are in compliance with Con-Way's policies and procedures as well as applicable federal and state regulations.  The audit results are reported in the following categories of exceptions: Priority Exceptions, Primary Exceptions, Secondary Exceptions, and Discussion Items.  Priority Exceptions are the most serious and

---

[1] In deciding the Motion for Summary Judgment, the Court must view the facts, and the inferences reasonably drawn from those facts, in the light most favorable to plaintiff Hale.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Smith v. Cont'l Cas. Co., 369 F.3d 412, 417 (4th Cir. 2004); Nguyen v. CNA Corp., 44 F.3d 234, 237 (4th Cir. 1995).

[2] Con-Way categorizes its service centers on a size scale of 1 through 6.  The largest service centers are Category 1 and the smallest service centers are Category 6.

Discussion Items are the least serious issues reported.

The audit performed by Mr. Wittwer resulted in 1 Priority Exception, 5 Primary Exceptions, 3 Secondary Exceptions, and 14 Discussion items.[3]  Wayne Waggoner, Con-Way's regional manager, sent a letter to plaintiff dated October 24, 2000 concerning the initial audit.  He  stated:

> Paul, [a]s you are aware, my visit to Norfolk, VA on the 10th and 11th was a disappointment.  Time to get back to square one at NNF from an audit standpoint.
>
> . . . .
>
> Before any location can build upon the [Con-Way] culture, local management must insure audit compliance.  It is your responsibility to every employee at the service center to insure they comprehend these basic requirements.
>
> The NNF audit revealed a service center in non-audit compliance on several major issues, including a priority in cash collections.  Before any service center can begin to grow efficiently and profitability, these requirements must be met.
>
> In the future it is your responsibility to maintain and sustain the basic audit compliance and foundations that must exist at any Con-Way service center.
>
> Internal audit will conduct another full audit in the first quarter of 2001 to follow up on the progress NNF has made from an audit standpoint.  I look forward to better results to get NNF on the road to build a great service center.

---

[3] Plaintiff contends that a complete audit when he first took over the Norfolk Service Center would have revealed even more Priority Exceptions.  Plaintiff thus contends that he had actually improved the Norfolk Service Center's performance by October 2000.  Oddly, Hale also contends that the Norfolk Service Center had even more problems than those documented by the first audit.  As a result, he asserts that the subsequent audits made his performance look worse than it really was because they revealed problems about which he had not previously been warned (but apparently knew of and did not correct).

In July 2002, Mr. Wittwer audited the Norfolk Service Center a second time.  This audit resulted in 10 Primary Exceptions, 6 of which were repeat items from the October 2000 audit.  On July 22, 2002, Wayne Waggoner sent plaintiff another letter concerning the poor audit results.  This letter stated:

> The recent internal audit in NNF completed on 7/18/02 resulted in 10 primary exceptions, of which 6 were repeats, 1 secondary exception, and 7 discussion items. <u>This is one of the worst, if not the worst audit in Con-Way history</u>.
>
> . . . .
>
> Paul it is your responsibility as the Service Center Manager to ensure audit compliance at your facility. <u>You are failing in this responsibility and I will not tolerate this any longer</u>.  You have been the SCM in NNF for two and a half years and this will not get any better until you raise your expectation level to your FOS's as well as customer service representatives in this area. Inspect what you expect by constant follow-up.
>
> This is symptomatic of a lack of attention to detail and any service center without this basic foundation at Con-Way Southern Express will eventually crumble.
>
> I will review your response to this audit . . . . I will then give you 90 days to get this cleared up, after which I will request a return visit by [sic] internal audit department to ensure your commitment to correct each of these exceptions and overall compliance to company policy and procedure.  You will be given any support you need, but the end result is in your hands.

(Hale Dep., Def. Ex. 16)(Emphasis added).

The follow-up audit mentioned in Mr. Waggoner's letter took place in November 2002 and resulted in 5 Primary Exceptions, one of which involved federally mandated driver pay records.  A fourth audit was conducted in April 2003 and resulted in 1 Priority and 4 Primary Exceptions.

Con-Way terminated plaintiff's employment for poor

performance on April 14, 2003.  Plaintiff was 50 years of age at

the time of his termination.


### II.  Principles of Summary Judgment


Summary judgment is appropriate only when "the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."[4]  Fed. R. Civ. P.

56(c); see also Hunt v. Cromartie, 526 U.S. 541, 549 (1999);

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Warch v. Ohio Cas.

Ins. Co., 435 F.3d 510, 513 (4th Cir. 2006); Walton v. Greenbrier

Ford, Inc., 370 F.3d 446, 449 (4th Cir. 2004).  A court "must

take special care" when considering a summary judgment motion in

an employment discrimination case because the employer's "motive

is often the critical issue."  Beall v. Abbott Labs., 130 F.3d

614, 619 (4th Cir. 1997); Evans v. Techs. Applications & Serv.

---

[4] Because the principles of summary judgment are well-
established, further elucidation of those principles need not be
provided here.  See Garrow v. Economos Props., Inc., 406 F. Supp.
2d 635, 638-39 (E.D. Va. 2005) (providing detailed description of
summary judgment principles); Taylor v. Wal-Mart Stores, Inc.,
376 F. Supp. 2d 653, 657-58 (E.D. Va. 2005) (same); Puckett v.
City of Portsmouth, 391 F. Supp. 2d 423, 430-31 (E.D. Va. 2005)
(same).

Co., 80 F.3d 954, 958 (4th Cir. 1996); Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987). Nevertheless, summary judgment remains an appropriate disposition when the plaintiff is unable to prevail on his or her discrimination claims as a matter of law.  Beall, 130 F.3d at 619; Evans, 80 F.3d at 958-59.

### III.  Analysis

Congress enacted the Age Discrimination in Employment Act ("ADEA") "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b).  The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000). Application of the ADEA is limited to "individuals who are at least 40 years of age."  29 U.S.C. § 631(a).

The touchstone of an ADEA action is that the adverse employment decision would not have been made, but for plaintiff's age.  In other words, the plaintiff's age must have been a determining factor in the employer's decision.  Reeves, 530 U.S.

6

at 141; Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315 (4th Cir.
1993); Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 238 (4th
Cir. 1982).  "[T]he mere fact of replacement by a younger
employee is not dispositive of age discrimination." Birkbeck v.
Marvel Lighting Corp., 30 F.3d 507, 512 (4th Cir. 1994); see also
Halperin v. Abacus Tech. Corp., 128 F.3d 191, 202 (4th Cir.
1997).  "The ADEA prevents employers from acting on the basis of
age -- not performance." Dockins v. Benchmark Commc'ns, 176 F.3d
745, 750 (4th Cir. 1999).  Employers are not required to "adopt a
life of economic altruism and thereby immunize protected class
members from discharge or demotion despite their poor
performance." Gairola v. Va. Dep't of Gen. Servs., 753 F.2d
1281, 1287 (4th Cir. 1985); see also Dockins, 176 F.3d at 750.

     Plaintiff Hale contends that he was fired because of his age
and that Con-Way ordered the audits to provide a pretext for his
firing.  (Docket No. 17 at p.12, ¶13).  Plaintiff appears to
pursue his claim under both the McDonnell Douglas "pretext"
approach and the "mixed motive" approach.  Each will be discussed
in turn.

A.   Pretext

     1.   The McDonnell Douglas Test

     A plaintiff may prove discrimination through circumstantial
evidence using the burden-shifting framework established by the
United States Supreme Court in McDonnell Douglas Corporation v.
Green, 411 U.S. 792 (1973).  See Mereish v. Walker, 359 F.3d 330,

334 (4th Cir. 2004); <u>Hill v. Lockheed Martin Logistics Mgmt.,</u>
<u>Inc.</u>, 354 F.3d 277, 284-85 (4th Cir. 2004); <u>Thompson v. Potomac</u>
<u>Elec. Power Co.</u>, 312 F.3d 645, 649 (4th Cir. 2002); <u>Puckett v.</u>
<u>City of Portsmouth</u>, 391 F. Supp. 2d 423, 431 n.2 (E.D. Va. 2005).
Under the <u>McDonnell Douglas</u> framework, a plaintiff has the
initial burden to prove a <u>prima</u> <u>facie</u> case of discrimination by a
preponderance of the evidence.  <u>McDonnell Douglas Corp.</u>, 411 U.S.
at 802; <u>see</u> <u>also</u> <u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44, 50
(2003); <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506 (1993);
<u>Mackey v. Shalala</u>, 360 F.3d 463, 468 (4th Cir. 2004).

Once the plaintiff establishes a <u>prima</u> <u>facie</u> case, the
burden shifts to the defendant to articulate a "legitimate,
nondiscriminatory reason" for the defendant's employment action.[5]
<u>McDonnell Douglas Corp.</u>, 411 U.S. at 802; <u>see</u> <u>also</u> <u>Raytheon Co.</u>,
540 U.S. at 50; <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 506-07;
<u>Mackey</u>, 360 F.3d at 468.  If the defendant meets this burden,
then "the presumption raised by the prima facie case is rebutted"
and the presumption "drops from the case."  <u>St. Mary's Honor</u>
<u>Ctr.</u>, 509 U.S. at 507 (quoting <u>Tex. Dep't of Cmty. Affairs v.</u>
<u>Burdine</u>, 450 U.S. 248, 255 & n.10 (1981)); <u>see</u> <u>also</u> <u>Mackey</u>, 360
F.3d at 468.

---

[5] Although the <u>McDonnell Douglas</u> framework shifts the burden
of production between the parties, the plaintiff retains the
"ultimate burden" of persuasion.  <u>St. Mary's Honor Ctr.</u>, 509 U.S.
at 508; <u>Burdine</u>, 450 U.S. at 253; <u>see</u> <u>Hill</u>, 354 F.3d at 285.

Once the defendant advances a facially legitimate reason for the adverse employment action, the plaintiff then must have a "full and fair opportunity" to demonstrate, through the presentation of its own evidence and the cross-examination of the defendant's witnesses, that the defendant's proffered reason for its employment decision was not the true reason, but was merely a pretext for discrimination.  St. Mary's Honor Ctr., 509 U.S. at 507-08; Burdine, 450 U.S. at 253, 255-56; Hill, 354 F.3d at 285; see Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 (4th Cir. 2002).  The plaintiff may prove pretext either by showing that the employer's proffered reason is "unworthy of credence" or by "offering other forms of circumstantial evidence sufficiently probative of age discrimination."  Mereish, 359 F.3d at 336; see also Reeves, 530 U.S. at 143; Dugan, 293 F.3d at 721; EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1992).  A prima facie case, coupled with probative evidence that the employer's explanation is false, would counsel against granting the employer summary judgment unless the employer presented other strong evidence "from which no reasonable factfinder could conclude that there was discrimination."  Price v. Thompson, 380 F.3d 209, 214 (4th Cir. 2004); see Reeves, 530 U.S. at 148.

Absent evidence of pretext for discrimination, the Court will refrain from acting as a "super-personnel department that reexamines an entity's business decisions."  Beall, 130 F.3d at 620; Garrow v. Economos Props., Inc., 406 F. Supp. 2d 635, 642 (E.D. Va. 2005).  The crucial issue is whether the employer has

an unlawfully discriminatory motive, not the wisdom or folly of
the employer's business judgments.  See Jiminez v. Mary Wash.
Coll., 57 F.3d 369, 383 (4th Cir. 1995); Garrow, 406 F. Supp. 2d
at 642.


     2.  Hale's Prima Facie Case

     To establish a prima facie case of age discrimination under
the ADEA, a plaintiff generally must show that (1) he is a member
of the protected age group; (2) he was qualified for the job and
he met his employer's legitimate expectations; (3) he was
discharged despite his qualifications and performance; and (4)
following the discharge, he was replaced by a substantially
younger individual with comparable qualifications.  Warch, 435
F.3d at 513; Blistein v. St. John's Coll., 74 F.3d 1459, 1467-68
(4th Cir. 1996); Mitchell, 12 F.3d at 1315; Lovelace, 681 F.2d at
238-39.

     Hale does not advance to the stage of showing pretext,
because he cannot establish the third element of his prima facie
case, i.e., that he was meeting his employer's legitimate
expectations.  See Warch, 435 F.3d at 513.  The audits
indisputably establish Hale's failure to comply with both federal
law and Con-Way's internal policies and procedures.  Hale does
not dispute the accuracy of the audits (Hale Dep. at 158-60, 216-
19, 274-75); he instead asserts adequate job performance because
the Norfolk Service Center was less badly managed during his
tenure than before and remained profitable.

A discharged employee "cannot create a genuine dispute concerning his prima facie case by cherry-picking the record to find one isolated instance where he arguably performed better than the average employee."  Warch, 435 F.3d at 518.  Hale's defaults were numerous, extended over a long period of time and were the subject of repeated warnings.  Some of the problems involved non-compliance with federal law.  This is surely enough for an employer to take action against a non-performing employee.

B.   Mixed Motive

Under the "mixed motive" approach, Hale can establish a violation of the ADEA by demonstrating that Con-Way decided to terminate his employment because of his age.  See Warch, 435 F.3d at 520; Mereish, 359 F.3d at 339; Hill, 354 F.3d at 284.  Age need not be the sole motivating factor for Con-Way's decision, but it must be a "substantial motivating factor."  Warch, 435 F.3d at 520; Mereish, 359 F.3d at 339; Hill, 354 F.3d at 284.  If Hale can satisfy his burden of showing that age was a "substantial motivating factor" for Con-Way's decision, then Con-Way must prove that it would have taken the same action absent consideration of Hale's age.  See Mereish, 359 F.3d at 339; Hill, 354 F.3d at 284.

1.   Direct Evidence

Hale primarily relies upon direct evidence in his attempt to establish that his age substantially motivated Con-Way to

11

terminate his employment.  "Direct evidence must be 'evidence of
conduct or statements that both reflect directly the alleged
discriminatory attitude and that bear directly on the contested
employment decision.'"  Warch, 435 F.3d at 520 (quoting Taylor v.
Va. Union Univ., 193 F.3d 219, 232 (4th Cir. 1999)).

Hale attempts to use various "stray" comments and statements
made by different members of Con-Way's management team to prove
that age was the substantial motivating factor in his
termination.  According to Hale, Regional Manager Wayne Waggoner
once commented to him that a certain candidate for an account
manager position, who was over 50 years old, was "too old" for
the position and that a "younger candidate" would be more
desirable.  (Hale Decl. ¶ 11).  Waggoner asked Hale, "Can't you
get someone who will be promotable and be around a while[?]"
(Hale Decl. ¶ 11).  Hale further alleges that Con-Way's new
president, Dave Miller, described the ideal manager as someone
"right out of college" who would be trained for six months in a
few different positions before being promoted to a management
position.  (Hale Decl. ¶ 12).  Similarly, SCM Vernon Hartnet
testified that he had heard some of Con-Way's senior executives
express their preference for candidates who were "promotable" and
"would be around for a while."  (Hartnet Dep. at 54).

Hale asserts that these statements demonstrate Con-Way's
"animus" toward older employees who were candidates for
employment.  He thus concludes that the statements constitute
evidence sufficient to show that age was a substantial motivating

12

factor in his termination.  Hale's conclusion is incorrect.

Assuming for purposes of summary judgment that these statements do indeed reflect a discriminatory attitude, they do not constitute direct evidence that Con-Way acted out of an improper motive when it terminated Hale's employment.  To be probative evidence of discrimination, the statements must have a nexus to the adverse employment action.  Warch, 435 F.3d at 520; see Brinkley, 180 F.3d at 608; see also EEOC v. Clay Printing Co., 955 F.2d 936, 942 (4th Cir. 1992).  "[G]eneral or ambiguous remarks referring to the process of generational change create no triable issue of age discrimination."  Mereish, 359 F.3d at 336.

Further, "when evaluating alleged age animus," the Court "must consider the context in which statements were made."  Id. at 337.  Statements made too remote in time from the date of the adverse action cannot be used as evidence of age discrimination.  Birkbeck, 30 F.3d at 511-12.  "Moreover, statements about age may well not carry the same animus as those about race or gender.  Unlike race or gender differences, age does not create a true we/they situation -- barring unfortunate events, everyone will enter the protected age group at some point in their lives."  Id. at 512.

The alleged statements made by Waggoner, Miller, Wittwer, and unidentified senior executives do not prove that age played any part in Con-Way's decision to terminate Hale's employment.  Simply put, the alleged statements lack the requisite "nexus" to be of any probative value.  See Warch, 435 F.3d at 520.  Neither

13

Waggoner nor Miller performed the audits which lie at the heart

of Con-Way's stated reason for terminating Hale's employment.

Further, Waggoner's alleged statements, made several years prior

to Hale's termination, are far too remote in time to be used as

evidence of an improper discriminatory motive.  See Birkbeck, 30

F.3d at 511-12.

The alleged statements, without more, are insufficient to

prove any improper animus.  Rather than demonstrate a

discriminatory purpose, such statements simply reflect a general

truism.[6]  Dockins, 176 F.3d at 749; Smith v. Flax, 618 F.2d 1062,

1066 (4th Cir. 1980).  Merely "[s]tating a fact of life does not

make one an age bigot."  Dockins, 176 F.3d at 749.

Hale also relies on a statement made by Chief Auditor George

Wittwer during an audit at the Norfolk facility in which Wittwer

privately informed him, "I just want you to know, Paul, I didn't

---

[6] The Fourth Circuit explained the general truism in
question:

> In any enterprise, today's juniors will be tomorrow's
> seniors.  Today's seniors can help create a foundation
> for tomorrow's growth and prosperity, but future
> realization of the potential of an enterprise lies
> principally with those who will be in positions of
> leadership and responsibility in the future.  So, too,
> every individual at some time reaches a peak in
> efficiency.  The peak may be relatively flat over a
> considerable period of time, but surely it will begin to
> wane if the individual lives long enough.  That is not to
> suggest in any way, however, that the individual should
> be replaced at the first sign that efficiency is somewhat
> less than it was some years ago.

Smith, 618 F.2d at 1066.  As then Chief Judge Wilkinson so aptly
noted, "every individual speaks with the knowledge that there
with the grace of God go I."  Dockins, 176 F.3d at 749.

want to be part of this."  This aside does not indicate that the audit or the ultimate decision to terminate Hale's employment had anything to do with Hale's age.  In fact, Wittwer later explained that he was merely attempting to express to Hale that he did not want to participate in the audit because of Hale's verbal abuse during previous audits.  (Wittwer Supp. Decl. ¶ 1).

There is no evidence that the alleged statements were related to Hale's employment.  Accordingly, the statements do not directly prove that Con-Way fired Hale because he was too old.[7]


2.  Circumstantial Evidence – Comparative Conduct

Hale also relies on circumstantial evidence to show that Con-Way was substantially motivated by his age.  The Court doubts that circumstantial evidence can be used under the mixed-motive framework.  See Warch, 435 F.3d at 520; see Mereish, 359 F.3d at 340; Hill, 354 F.3d at 285 n.2.  However the Court need not decide the issue because Hale's claim still fails even when both direct and circumstantial evidence are considered.

Hale contends that younger, otherwise similarly situated, service center managers committed similar or more serious transgressions than Hale, yet suffered little or no adverse

---

[7] Additionally, the evidence suggests that Worthington was the decision-maker who effectively made the decision to terminate Hale.  Miller had only been president for three months when he accepted Worthington's recommendation to fire Hale.  See Garrow, 406 F. Supp. 2d at 641 (actual decisionmaker must be the one with discriminatory bias).  The stray comments of Miller and Waggoner concerning age are immaterial to whether Worthington was improperly motivated by a discriminatory animus.

employment consequences.  To support his contention, Hale relies on Con-Way's gradation discipline system.  According to Hale, written Letters of Instruction (LOIs) were the most serious form of written admonishment.  Hale argues that the LOIs for the younger managers show that Con-Way treated them "far more leniently" than it treated Hale.

Hale's argument is without merit.  No service center manager, regardless of age, had an audit history as poor as Hale's audit record.  Hale has not presented any evidence that any other employee at Con-Way had the same problems as he did "across the board."  See Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1228 (4th Cir. 1998).  The LOIs of the alleged comparators covered a broad range of performance issues, often unrelated to audit findings.  Moreover, Con-Way gave Hale multiple written warnings in addition to the four negative audits that he received.  Thus, none of the alleged comparators is similarly situated to Hale.

Con-Way discharged Hale because of the poor results he obtained on his audits, and not for any negative progression of accumulated LOIs.  Further, there is no evidence in the record that either Worthington or Miller were aware of the LOIs of Hale and his alleged comparators when the decision was made to terminate Hale's employment.

Finally, fellow members of Hale's protected class, employees who are nearly the same age as Hale, have received favorable audits from Con-Way.  Those employees have either remained

16

employed with Con-Way or have left their employment voluntarily.


<u>IV.   Conclusion</u>


For the reasons stated above, the Court **GRANTED** defendant's

Motion for Summary Judgment by Order dated March 31, 2006.

(Docket No. 22).

The Clerk is **DIRECTED** to forward a copy of this Opinion and

Order to all counsel of record.


        **IT IS SO ORDERED**.


                       _____/s/_____
                            Walter D. Kelley, Jr.
                  UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April 4, 2006